IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0173

_____

**FILED**

**April 10, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

KENNETH SEEN,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Roane County
The Honorable Thomas C. Evans, III, Judge
Civil Action No. 13-M-02

AFFIRMED IN PART AND REVERSED IN PART

_____

Submitted: February 10, 2015
Filed: April 10, 2015

S. Benjamin Bryant, Esq.                        Patrick Morrisey, Esq.
Carey, Scott, Douglas & Kessler, PLLC           Attorney General
Charleston, West Virginia                       Benjamin F. Yancey, III, Esq.
Attorney for the Petitioner                     Assistant Attorney General
                                                Charleston, West Virginia
                                                Attorneys for the Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *State v. Hinchman*, 214 W. Va. 624, 591 S.E.2d 182 (2003).

2. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

3. "In order for a sentencing judge to make a finding pursuant to W. Va. Code

i

§ 15-12-2(c) (2001) that a defendant who has been convicted of a criminal offense - after a trial or by means of a plea of guilty or nolo contendere - was 'sexually motivated' in the commission of that offense, the defendant must have been advised prior to trial or the entry of a plea of the possibility of such a finding." Syl. Pt. 1, *State v. Whalen*, 214 W.Va. 299, 588 S.E.2d 677 (2003).

4. "The evidentiary standard for a finding of 'sexual motivation' pursuant to W. Va. Code § 15-12-2(c) (2001) is proof beyond a reasonable doubt, and a defendant must be given the opportunity to oppose and contest such a proposed finding with evidence and argument." Syl. Pt. 2, *State v. Whalen*, 214 W.Va. 299, 588 S.E.2d 677 (2003).

5. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

6. "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution." Syl. Pt. 4, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975).

7. "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).

8. "In a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Syl. Pt. 3, *State v. Frazier*, 229 W.Va. 724, 735 S.E.2d 727 (2012).

9. "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

10. "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

11.  "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict.  This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."  Syl. Pt. 2, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

Workman, Chief Justice:

        This is an appeal by Kenneth Seen (hereinafter "petitioner") from a judgment

of the Circuit Court of Roane County in which the lower court found the petitioner guilty of

battery, found that the offense was sexually motivated, and ordered the petitioner to register

as a sex offender.  Upon thorough review of the appendix record, the arguments of the

parties, and the applicable precedent, this Court affirms the battery conviction and reverses

the finding that the offense was sexually motivated.


                        I.  Factual and Procedural History

        On August 31, 2012, Mr. John S., a patient[1] at the long term care component

of Roane General Hospital in Spencer, West Virginia, bit off a portion of the petitioner's

tongue.  The petitioner, a physician employed as a hospitalist at Roane General Hospital from

2003 until October 2012, had begun an examination of Mr. S. at approximately 8:00 p.m. and

had advised a nurse that he did not need assistance in the examination.[2]

---

[1]Mr. S. was seventy-seven years of age at the time of the incident and was suffering from dementia, Parkinson's Disease, arthritis, depression, and anxiety.  He is now deceased. This Court continues to follow the practice of using initials to identify individuals in cases with sensitive facts.  *See In re Jeffrey R.L.*, 190 W.Va. 24, 26 n. 1, 435 S.E.2d 162, 164 n. 1 (1993).

[2]Although another doctor typically handled patient admissions, the petitioner indicated that he wished to admit Mr. S. on the evening in question due to the fact that the petitioner had taken care of Mr. S. when he was previously in the long term care unit.

During the examination, Mr. S. bit off a portion of the petitioner's tongue. According to the record, the petitioner did not immediately report this incident. He departed Mr. S.'s room, deposited the chart at the nurse's station, and went to his office. Approximately one hour after the incident occurred, the petitioner telephoned a physician on duty in the hospital's emergency room, Dr. Jason Fincham, and asked Dr. Fincham to examine the petitioner in the emergency room. The petitioner did not explain his injury at that time. Dr. Fincham informed the petitioner that the emergency room was very busy.

The petitioner thereafter informed staff members that Mr. S. had bitten his tongue. The nurse with whom the petitioner spoke testified that the petitioner's mouth was covered with a paper towel or washcloth and that he motioned to her to read what he had typed into his laptop computer. The message informed her that he had been performing an assessment of Mr. S. and had leaned in toward Mr. S. to better hear him. The petitioner explained that when he bent down, Mr. S. grabbed his tongue and bit it. Nurses then examined the petitioner and observed that a portion of his tongue was missing.

Dr. Fincham was contacted again, and he arrived at the acute care floor to begin treating the petitioner. The petitioner informed Dr. Fincham that he was licking his lips when Mr. S. bit his tongue. Dr. Fincham administered pain medications and other

2

necessary medications to the petitioner and arranged for the petitioner to be transported by ambulance to Charleston Area Medical Center in Charleston, West Virginia, to consult a specialist. The petitioner was examined and treated at Charleston Area Medical Center and was released later that same night.

After transferring the petitioner to Charleston, Dr. Fincham examined Mr. S. Dr. Fincham testified that Mr. S. was alert, but confused, disoriented and unable to communicate. Mr. S. had blood around his lips and in his mouth. He was also chewing something.[3] Due to his arthritic condition, the joints of Mr. S.'s hands were swollen, his fingers were drawn inward, and his grip strength was poor. Dr. Fincham believed that Mr. S. lacked the fine motor skills, strength, and grasping ability to hold the petitioner's tongue.[4]

On September 1, 2012, Dr. Timothy Metzger examined Mr. S. Dr. Metzger indicated that Mr. S. was weak and unable to move his hands well. Mr. S. did not demonstrate any physical aggression toward any staff member; however, Mr. S. was not

---

[3]Later in the evening of August 31, 2012, two certified nursing assistants entered Mr. S.'s room to perform the routine procedures of bathing, shaving, and brushing teeth. The assistants noticed fresh blood on the floor and bedspread. During the process of brushing Mr. S.'s teeth, the assistants recovered a bloody substance from Mr. S.'s mouth, thought to be a portion of the petitioner's tongue.

[4]A nurse who treated Mr. S. also testified that he was elderly, debilitated, and lacked the strength to sit up. The nurse indicated that Mr. S. did not have strong grasping ability and that his hands were arthritic and stiffened, with fingers curled inward toward his palms. She testified that she had never seen Mr. S. extend or open his fingers.

3

compliant when Dr. Metzger attempted to conduct an examination of Mr. S.'s mouth. When Dr. Metzger asked Mr. S. about the incident with the petitioner, Mr. S. became upset and indicated to Dr. Metzger that something had happened between him and the petitioner. Mr. S. refused to talk about it and stated that he did not want to dwell on it.

Mr. Douglas Bentz, the Chief Executive Officer of Roane General Hospital, investigated the incident and telephoned the petitioner on September 1, 2012. During this conversation, the petitioner reported that the incident occurred as he was leaning over to hear what Mr. S. was saying. The petitioner further reported that Mr. S. had grabbed the back of the petitioner's neck and bit his tongue. Mr. Bentz also met with the petitioner on September 7, 2012. During this meeting, the petitioner reported that Mr. S. had grabbed the back of his neck with one hand and had reached up with his other hand to grab the petitioner's tongue, pulling the petitioner toward him.

On September 18, 2012, Mr. S.'s daughter filed a criminal complaint with the West Virginia State Police. Trooper Frederick Hammack investigated the matter and visited Mr. S. on October 1, 2012. Trooper Hammack indicated that Mr. S. was unable to speak and had very little grip strength. Trooper Hammack further noted that the knuckles of Mr. S.'s hands were bent, with his fingers pointing inward towards his body. Trooper Hammack indicated that he found Mr. S. to be "as frail . . . a human being as [he had] ever attempted

4

. . . to speak to about anything."

On March 18, 2013, the petitioner was charged by information with violating the general battery statute, West Virginia Code § 61-2-9 (c) (2013). The information alleged that the petitioner "did unlawfully and intentionally make physical contact of an insulting or provoking nature with the person of John [S.] when [the petitioner] did place his tongue inside the mouth of said John [S.] . . . ." The petitioner moved for a bench trial, waiving his right to a jury, and the case was tried before the lower court on October 30 and 31, 2013.[5]

The State did not provide pretrial notice of its intent to seek a finding that the alleged battery was sexually motivated. As the State prepared to call its first witness, the circuit court requested an opening statement, and the State then asked the court to find the petitioner guilty of the crime of battery for physical conduct of an insulting and provoking nature. Additionally, the State expressed its intent to request a finding of sexual motivation. The prosecutor's comments in that opening statement constituted the first and only notice to the petitioner that the State was seeking the finding of sexual motivation.[6]

---

[5]The West Virginia Board of Medicine has suspended the petitioner's license, based upon the allegations in this case.

[6]West Virginia Code §§ 15-12-2(b) and (e) identify the circumstances under which a convicted person must register as a sex offender. First, any person convicted of a "qualifying offense" must register as a sex offender, and these "qualifying offenses" are listed in West Virginia Code § 15-12-2(b)(1) - (7). These offenses include explicitly sexual elements. Additionally, pursuant to West Virginia Code § 15-12-2(c), a convicted person

5

On October 31, 2013, the trial court found beyond a reasonable doubt that the petitioner was guilty of battery. The court further found that the battery was sexually motivated. An order was entered on November 4, 2013, enunciating the court's findings and ordering the petitioner to register with the West Virginia State Police as a sex offender, pursuant to West Virginia Code §§ 15-12-1 to -10 (2014).

The petitioner filed a motion for a new trial on November 14, 2013, challenging evidentiary findings and asserting that the sexual motivation finding was erroneous. On December 16, 2013, the court denied the motion and sentenced the petitioner to two years probation with the requirement of 300 hours of community service. The court further ordered the petitioner to register as a sex offender for ten years and pay a $500 fine, as well as other costs and fees. The final order was entered on December 23, 2013.

The petitioner now appeals to this Court, contending that (1) the trial court's finding of sexual motivation and consequent order that the petitioner register as a sex offender constitute plain error and must be vacated because neither the State nor the court gave the petitioner pretrial notice concerning sex offender status and registration; (2) the trial court's finding of sexual motivation was based on speculation and must be vacated; and (3)

---

must register as a sex offender where convicted of another crime, if the sentencing judge makes a written finding that the offense was "sexually motivated." W. Va. Code § 15-12-2(c).

6

the trial court's finding that the petitioner was guilty of battery was not supported by sufficient evidence. For purposes of evaluation on appeal, this Court will combine the petitioner's two issues regarding the finding of sexual motivation.

## II. Standard of Review

The petitioner's first assignment of error involves a question of law on the issue of pretrial notice concerning the State's intention to seek a finding of sexual motivation. This Court has consistently observed:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *State v. Hinchman*, 214 W. Va. 624, 591 S.E.2d 182 (2003).

The petitioner's remaining assignment of error is based upon sufficiency of the evidence and is consequently governed by a separate standard of review. In syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court explained:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The

7

evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

With these standards as guidance, we address the contentions of the parties.

## III. Discussion

### A. Pretrial Notice of Intent to Seek Finding of Sexual Motivation

The petitioner first asserts that his due process rights were violated by the State's failure to provide pretrial notice of its intent to seek a finding of sexual motivation. The petitioner further contends that the trial court's finding of sexual motivation and consequent order requiring him to register as a sex offender constitute plain error[7] requiring reversal.

The petitioner agues that a violation of a defendant's constitutional rights to due process under the Fourteenth Amendment to the United States Constitution occurs when the defendant is not provided with required pretrial notice. *See* U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities

---

[7]The petitioner failed to preserve the issue of pretrial notice by objecting in the proceedings below. Thus, evaluation of this issue on appeal is limited to plain error analysis.

of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law. . . .); W. Va. Const. art. III, § 14 (providing that in all criminal trials, "the accused shall be fully and plainly informed of the character and cause of the accusation. . . ."). As the United States Supreme Court explained in *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process protections impose constraints on the procedures through which the government can deprive an individual of protected liberty or property interests. *Id.* at 349. Notice of potential deprivations and opportunity to be heard are required. *Id.*[8]

In *State v. Whalen*, 214 W.Va. 299, 588 S.E.2d 677 (2003), this Court addressed the issue of procedural protections and specifically required that pretrial notice be provided to a defendant of the State's intention to seek a finding of sexual motivation. Syllabus point one of *Whalen* explains:

> In order for a sentencing judge to make a finding pursuant to W.Va. Code, 15-12-2(c) [2001] that a defendant who has been convicted of a criminal offense that is not specifically identified in the Sex Officer Registration Act at W.Va. Code, 15-12-2(b) [2001] - after a trial or by means of a plea of guilty or nolo contendere - was "sexually motivated" in

---

[8]*See also Lankford v. Idaho,* 500 U.S. 110, 126 (1991) ("Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure.").

9

the commission of that offense, the defendant must have been advised prior to trial or the entry of a plea of the possibility of such a finding.

214 W.Va. at 300, 588 S.E.2d at 678. The Court also held in syllabus point two of *Whale*n that "[t]he evidentiary standard for a finding of 'sexual motivation' pursuant to W. Va. Code § 15-12-2(c) (20001) is proof beyond a reasonable doubt, and a defendant must be given the opportunity to oppose and contest such a proposed finding with evidence and argument." *Id.* In *Whalen*, the defendant had pled guilty to burglary, and the circuit court found that the burglary was sexually motivated. *Id.* On appeal, the defendant argued that neither he nor his counsel knew the circuit court intended to make such a finding.

In this Court's analysis in *Whalen*, we recognized the distinction between the offenses listed in West Virginia Code § 15-12-2(b), containing explicitly sexual elements, and the extensive array of other crimes that do not contain an explicitly sexual element. Nonetheless, the statute, as quoted above, specifies that other crimes may be deemed sexually motivated, and a defendant may be required to register as a sex offender. 214 W.Va. at 301, 588 S.E.2d at 679. This Court concluded in *Whalen* that the defendant would be permitted to withdraw his guilty plea due to the State's failure to provide pretrial notice of its intent to seek a finding of sexual motivation. 214 W.Va. at 304, 588 S.E.2d at 682.

In the present case, the petitioner contends that the information alleged only

10

that he had committed battery by placing his tongue inside Mr. S.'s mouth. The petitioner was not provided with pretrial notice of the potential for a finding that the battery was sexually motivated, and battery is not listed as a "qualifying offense" in West Virginia Code § 15-12-2(b). He was therefore not advised, prior to trial, of the potential to be classified a sex offender with the concomitant registration requirements.

The petitioner admits that his counsel did not object during the State's opening statement when the prosecuting attorney first announced that the State would request a sexual motivation finding from the trial court. Likewise, the petitioner did not assert the lack of pre-trial notice as error in his motions for judgment of acquittal and new trial. Nevertheless, on appeal, the petitioner contends that the absence of notice constitutes plain error and warrants the consideration of this Court.

This Court has consistently held: "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995); *see also* Syl. Pt. 2, *State v. White*, 231 W.Va. 270, 744 S.E.2d 668 (2013). Moreover, this Court has held that "[a]lleged errors of a constitutional magnitude will generally trigger a review by this Court under the plain error doctrine." *State v. Salmons*, 203 W.Va. 561, 571 n.13, 509 S.E.2d 842, 852 n.13

11

(1998). Similarly, in syllabus point four of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), this Court explained: "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution."

We have also stated: "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). Indeed, an error involving a deprivation of a constitutional right may be regarded as harmless only "if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Moreover, in syllabus point three of *State v. Frazier*, 229 W.Va. 724, 735 S.E.2d 727 (2012), this Court explained: "In a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

Likewise, in deciding the issue of whether a constitutional violation is harmless, the United States Supreme Court held in *Chapman v. California*, 386 U.S. 18 (1967), that the burden is on "the beneficiary of a constitutional error to prove beyond a

12

reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24; *see Bessey v. State*, 239 S.W.3d 809, 814 (Tex. Crim. App. 2007) (finding omitted admonition regarding sex offender registration harmless where defendant not eligible for parole for 100 years and therefore would never be released and required to register as sex offender).

In the case sub judice, the State explained in its brief that it "agrees with Petitioner that error was committed and that such error was plain." The petitioner contends that the failure to provide notice profoundly prejudiced him and affected his substantial rights by limiting his notice of the nature of the case being prosecuted against him, the elements the prosecution had to prove, and precisely what he needed to defend at trial. He argues that he knew only that this was a battery case involving an alleged insulting or provocative physical contact and that he did not know he would be required to defend against an allegation that the crime was sexually motivated. Had the State provided pretrial notice as required by *Whalen*, the petitioner contends that he could have presented evidence to rebut the issue of sexual motivation and would have considered utilizing expert evidence to prove he was not attracted to men and that he would not receive sexual gratification from kissing a man.

In this Court's decision in *Whalen*, we unequivocally declared the requirement for pretrial notice in circumstances like those encountered in the present case. Pretrial notice

in this criminal setting is a requirement of constitutional magnitude and involves procedural due process rights to which a defendant is entitled prior to trial. The Court finds that the error affected the petitioner's substantial rights and prejudiced him by severely limiting his ability to prepare a defense at trial. We further find that this error seriously affected the fairness of the judicial proceedings instituted against the petitioner.

In this situation, it is incumbent upon the State to prove that the error was harmless beyond a reasonable doubt. The State has not succeeded in proving harmless error in this case. As the petitioner contends, his trial strategy would have been altered drastically if he had known he had to defend against the contention that the act was sexually motivated.

Based upon the foregoing, this Court vacates the portion of the underlying decision finding that the petitioner's battery of Mr. S. was sexually motivated and that the petitioner must register as a sex offender.

## B. Sufficiency of the Evidence

The petitioner also contends that the battery conviction was not supported by sufficient evidence. As explained above in syllabus point three of *Guthrie*, a defendant carries a heavy burden in challenging the sufficiency of the evidence supporting a conviction. 194 W. Va. at 663, 461 S.E.2d at 169; *see also* Syl. Pt. 3, *State v. White*, 231 W.Va. 270, 744

14

S.E.2d 668 (2013). In syllabus point one of *Guthrie*, this Court also held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

194 W. Va. at 663, 461 S.E.2d at 169.

The petitioner contends that the trial court incorrectly assessed the evidence regarding Mr. S.'s capacity to grab the petitioner and bite his tongue. The petitioner contends that although Mr. S. was somewhat physically impaired, he had picked up a pair of support hose earlier on the day of this incident and had placed them in his mouth. He had also previously become aggressive, had requested a gun, had made sexual comments, and had touched a hospital staff member's breast. The petitioner also places emphasis on the evidence that Mr. S.'s lack of oral hygiene was particularly egregious.

The petitioner further contends that he did not make any truly inconsistent statements regarding the incident, having informed various hospital personnel that Mr. S. either grabbed his tongue or pulled him down and that the petitioner had a habit of sticking out his tongue. The petitioner argues that these inconsistencies relate only to the exact

15

mechanism by which Mr. S. bit the petitioner's tongue and do not constitute any attempt to obfuscate the issues or conceal the truth regarding the incident. Similarly, the petitioner contends that his actions subsequent to the incident may be attributable to his own humiliation, rather than efforts to disguise the truth.

In response to the petitioner's contentions, the State asserts that the evidence was sufficient to sustain the verdict of guilt on the battery charge. The State emphasizes that the petitioner did not immediately report this incident or seek medical attention. Rather, the evidence indicated that the petitioner exited the area and went to his office. Approximately one hour later, he telephoned an emergency room physician but did not inform him of the any details regarding the incident.

The State further contends that the evidence regarding Mr. S.'s physical condition clearly supports the trial court's ultimate findings. The testimony of multiple individuals, including two doctors, three registered nurses, two certified nursing assistants, and the police officer in charge of investigating the case, indicated that Mr. S. lacked the ability to grab the petitioner's tongue and bite it. The State argues that although Mr. S. had grabbed support hose hours before this incident, the evidence further indicated the limitations of his strength, as demonstrated by the fact that nurses were readily able to remove the stockings from Mr. S.

16

The State also addresses the evidence regarding Mr. S.'s prior verbal threats, sexual hallucinations, a request for a gun, and touching a staff member's breast. The State contends that all evidence was properly submitted to the trial court for evaluation and that the determination by the court was premised upon issues of credibility and weight appropriate for evaluation by the court. For instance, the trial court analyzed the evidence presented and reasoned as follows:

> Now, there was evidence while he [Mr. S.] was on the extended care unit of agitated behavior, somewhat aggressive behavior, of sexual comments. If you - there was put into evident [sic] these behavior flow charts for a 12-month period. If you look at those carefully, you could see that for the last several months leading up to the date that this incident occurred, that there was little, if any of this sort of aggressive conduct noted in these charts.

The court also addressed the method by which the petitioner's tongue may have been bitten, as follows:

> I listened to Dr. Seen's lengthy testimony, and I read the reports here. I noted the inconsistencies in statements made by Dr. Seen to various officials about what had happened, and I come back to application of what I think is just common sense. I mean, I think it is highly unusual, highly bizarre that a physician in these circumstances could get the tip of their tongue bitten off. . . . [T]he attending physician at Roane General said one-half to three-quarters of an inch of the man's tongue was bitten off but he didn't see him [the attending physician] for an hour. He didn't see him for at least an hour after the event[.]

The court continued: "I am of the opinion that when Dr. Seen left Mr. S.'s room that night, . . . his actions there afterwards were simply designed to cover-up what had happened. That is the consistent explanation from the uncontradicted evidence in this case."

17

This Court's review clearly indicates that the trial court engaged in a thorough and exhaustive analysis of the evidence presented. The trial court adhered to the mandates expressed in syllabus point two of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), which provided as follows:

> When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Viewed in a light most favorable to the prosecution, the evidence in this case demonstrated that Mr. S. was very weak and unlikely to be physically capable of grabbing the petitioner's tongue or pulling the petitioner close to him. The trial court analyzed the evidence of the petitioner's response to the incident and his delay in revealing the injury and explaining the circumstances of its occurrence. We find no merit in the petitioner's assertion that the evidence was insufficient to support the conclusion that the petitioner committed battery.

## IV. Conclusion

Based upon the foregoing, this Court concludes that the petitioner was denied due process by the State's failure to provide pretrial notice as required by this Court in *Whalen.* Consequently, the sexual motivation finding and order to register as a sex offender

18

are vacated.  This Court further finds that the battery conviction is supported by sufficient evidence, and that conviction is therefore affirmed.

Affirmed, in part, and reversed, in part.

19