# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0714** (Berkeley County 17-F-42)

**Daniel M.,**
**Defendant Below, Petitioner**

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Daniel M., by counsel Stephanie E. Scales-Sherrin, appeals the Circuit Court of Berkeley County's July 17, 2017, order sentencing him to one to five years of incarceration for his conviction of child abuse resulting in injury and six months in the regional jail for his conviction of domestic battery.[1] The State of West Virginia, by counsel Gordon L. Mowen II, filed a response in support of the circuit court's order. On appeal, petitioner argues that the court erred in (1) designating the victim as an unavailable witness and permitting the State to use, and publish to the jury, a transcript of her testimony from a related domestic violence proceeding; (2) prohibiting him from introducing evidence concerning plea negotiations; and (3) denying his motion for a new trial. Lastly, petitioner alleges that the evidence was insufficient to support his conviction.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, petitioner was indicted on one count of child abuse resulting in injury, one count of domestic battery, and one count of strangulation. These charges stemmed from an incident in November of 2016 wherein petitioner was involved in a physical altercation with his stepdaughter. According to evidence introduced at trial, in November of 2016, the victim, R.F., was getting ready for swim practice. Petitioner and the victim's mother were

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

waiting for her to leave. At some point, petitioner confronted the victim and told her to "hurry up." Petitioner continued to verbally assault the victim and obstructed the victim's path between the bathroom and her bedroom. The victim indicated that during their physical altercation, petitioner knocked her into a banister, put his hand on her chest to shove her into a wall, slammed her to the floor, and restricted her breathing for between three and five seconds by grabbing her neck. After the altercation, the victim and her mother reported the incident to law enforcement and the victim underwent a medical examination.

In May of 2017, petitioner's jury trial took place over three days. At trial, petitioner presented a defense in which he alleged that the victim was the initial aggressor and he merely restrained her during their altercation. Petitioner further alleged that "bringing the matter to trial was the result of an overzealous prosecution" given that that victim and her mother expressed a desire that the matter not be prosecuted. In support of this defense, petitioner introduced a letter from the victim and her mother to the prosecuting attorney sent shortly before trial that indicated that neither individual wished for petitioner to be prosecuted for these crimes.

The State first called the victim, who testified to her version of the physical altercation at issue. However, when questioned about her prior testimony during a related proceeding to obtain a domestic violence protective order ("DVPO") against petitioner, the victim indicated that she could not recall much of that prior testimony. In response to several questions, the victim provided testimony that was inconsistent with the testimony she provided at the prior DVPO proceeding. Consequently, the prosecutor relied on the victim's prior testimony to refresh her recollection several times. Eventually, the State moved for the circuit court to declare the victim an unavailable witness under Rule 804 of the West Virginia Rules of Evidence and permit the State to introduce the victim's prior testimony into evidence. Ultimately, the circuit court declined to designate the witness as unavailable and further declined to permit the introduction of the prior statement into evidence. The circuit court did, however, permit the State "liberal use of the prior statement" for purposes of impeachment, including permitting the State to project portions of the transcript from the prior proceeding in the courtroom. Thereafter, the victim was permitted to testify about the event itself and also provide further explanation regarding her prior testimony at the DVPO proceeding.

In relation to the incident in question, the victim mostly confirmed her earlier testimony, including that petitioner threw her to the floor "like a body slam" multiple times, resulting in her head hitting a wall and the floor. She further testified that petitioner "chok[ed her] on the ground" for between three and five seconds. According to the victim, she was unable to breathe and "was trying to scream, [but] just couldn't." The victim also testified to injuries sustained during this altercation, including bruising to her elbows, eye, and foot; a mark on her neck where petitioner choked her; and multiple scratches to various parts of her body. According to the victim, petitioner initiated the physical altercation when he shoved her. The victim also testified to obtaining medical treatment for her injuries and confirmed that she told medical personnel that she suffered discomfort when swallowing due to petitioner choking her.

The victim's mother also testified at trial and recalled that the victim was screaming when she exited the home after the altercation, describing the victim as "hysterical" at that time. According to the mother, the victim indicated that petitioner attacked her and told her that her

head hurt and her throat was sore as a result of the physical altercation. The mother also testified to reporting the incident to the police and taking the victim to obtain medical treatment.

The State also presented the testimony of Betty Fisher, who was qualified as an expert forensic nurse examiner. Ms. Fisher examined the victim shortly after the incident and testified that the victim reported that she was in a fight with petitioner during which he threw her to the floor and "held [her] down to the floor by her neck[,]" among other acts. Ms. Fisher testified that the victim reported pain in her right lateral chest, joint and neck pain, pain in her left foot, tenderness on her right ribs, and difficulty seeing and hearing. According to Ms. Fisher, the victim also reported difficulty swallowing as a result of the physical altercation. After examining the victim, Ms. Fisher determined that she suffered an abrasion on her right side, a bruise to her left eye, a bruise on her left ankle, and an abrasion on her right wrist. According to Ms. Fisher, these injuries were consistent with the physical altercation described by the victim. Additionally, the State introduced photographs of these injuries during Ms. Fisher's testimony.

Petitioner testified to his version of the physical altercation. According to petitioner, the victim initiated physical contact by running into him. He then "went after her verbally. . . ." After the victim attempted to walk past him, petitioner indicated that he "put [his] hand on her chest and just stopped her against the wall." After telling the victim that he "should just beat [her] ass right now[,]" petitioner then put his hand back on her chest and "put her against the wall." According to petitioner, the victim then sunk her fingernails into his chest and slapped his face, at which point he grabbed both her wrists and "more forcefully put her against the wall. . . ." Petitioner claimed the victim then bit him on the chest and lunged at him, at which point he "let her momentum and weight" take them both to the ground. Once on the ground, petitioner indicated that he kept the victim pinned so that she could not attack him further. This included his "hand going to her neck" so that the victim could not bite him again. Upon releasing the victim, petitioner claimed that she "started clawing at [his] chest again and [his] arms." This caused petitioner to take the victim back to the floor. After more struggling on the floor, petitioner eventually let the victim up, at which point he testified that she grabbed her bag and ran downstairs. Although petitioner claimed to have been injured during this altercation, he testified that no one saw those injuries. Ultimately, the jury convicted petitioner of child abuse resulting in injury and domestic battery. The jury acquitted petitioner of strangulation.

In July of 2017, the circuit court held a sentencing hearing during which it imposed a sentence of one to five years of incarceration and a $100 fine for petitioner's conviction of child abuse resulting in injury and six months in the regional jail for petitioner's conviction of domestic battery, said sentences to be served consecutively. However, the circuit court suspended these sentences in favor of three years of supervised probation. The circuit court also imposed a period of five years of supervised release and informed petitioner that he was required to register as a child abuser for a period of ten years.

In August of 2017, petitioner filed a motion for a new trial. In support of his motion, petitioner alleged that he obtained newly discovered evidence that supported his theory of overzealous prosecution. Specifically, he alleged that during jury deliberations, the victim's mother was terminated from her employment with the Berkeley County Prosecuting Attorney's Office "in retaliation for her unwillingness to testify in a negative manner" toward petitioner at

trial. The circuit court denied the motion, in part, upon petitioner's failure to provide supporting affidavits, as required by law. It is from the circuit court's sentencing order that petitioner appeals.

This Court has previously established the following standard of review:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *State v. Hinchman*, 214 W.Va. 624, 591 S.E.2d 182 (2003).

Syl. Pt. 1, *State v. Seen*, 235 W.Va. 174, 772 S.E.2d 359 (2015).

First, petitioner alleges that the circuit court erred in designating the victim as an unavailable witness under Rule 804 of the West Virginia Rules of Evidence and in allowing the State to read from, and publish to the jury, her testimony from the prior DVPO proceeding. As a preliminary matter, we note that petitioner's assignment of error misstates the record below, as there is no indication that the circuit court ever designated the victim as an unavailable witness. The record shows that although the State moved to have the witness designated as unavailable, the circuit court specifically indicated that it was "not going to say yay or nay on the unavailability/804/confrontation" issue.[2] Given that the majority of petitioner's argument on appeal is predicated on his assertion that the circuit court erred in its application of Rule 804 in designating the witness as unavailable, it is clear that he is entitled to no relief upon any of these grounds.

---

[2]In support of his assignment of error, petitioner cites to additional statements from the circuit court to argue that the circuit court designated the witness as unavailable. According to petitioner, the circuit court indicated that it was "going to make a decision as to [the victim's] unavailability for purposes of 804. . . ." Relying solely on this language, petitioner concludes that the circuit court granted the State's motion and designated the witness as unavailable. We disagree. Instead, this language simply indicates only that the circuit court intended to make a ruling on the issue; however, at no point in the remainder of the transcript does the circuit court ever explicitly indicate that it has designated the witness as unavailable. This language could equally have indicated that the circuit court intended to rule against the State. Indeed, the record supports a finding that the circuit court did not designate the witness as unavailable, given that it explicitly ruled that the victim "needs to be on the stand to explain herself" in relation to her prior testimony at the DVPO proceeding. Further, the circuit court ruled that "of course [the victim is] going to be subject to cross[-]examination." Finally, the circuit court ruled that it would permit the State to "demonstrate that the version [of her testimony] that she gave prior [to trial] is not consistent with what . . . you're getting today[,]" indicating that the prior testimony was used for impeachment purposes. In short, petitioner has simply failed to cite to any portion of the record wherein the circuit court designated the witness as unavailable.

4

Further, petitioner concedes that the victim's prior testimony "could have been properly introduced by the State for impeachment purposes[,]" although he alleges that "the transcript would not be admissible" in the same manner as he alleges it was introduced at trial.[3] Indeed, we have held that "Rule 607 of the West Virginia Rules of Evidence allows a party, including the one who called the witness, to impeach a witness by a prior inconsistent statement." Syl. Pt. 3, *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990). However, petitioner's argument again misstates the record, as the portions of the transcript the State relied upon to impeach the witness were not admitted into evidence. Instead, the State simply read from the victim's prior testimony for purposes of impeaching her testimony at trial. To the extent that petitioner argues that publishing those portions of the transcript to the jury during the witness's testimony was improper, we find no error given that they were not admitted into evidence and the jury was free to hear the statements by way of impeachment. "A trial court's evidentiary rulings, as well as its application of the West Virginia Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). Based on the foregoing, we find that petitioner is entitled to no relief.

Next, petitioner argues that the evidence introduced at trial was insufficient to support his conviction for child abuse resulting in injury because the element of bodily injury was not satisfied.[4] Under West Virginia Code § 61-8D-3(a), "[i]f any parent, guardian or custodian shall abuse a child and by such abuse cause such child bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony. . . ." According to West Virginia Code § 61-8B-1(9), "'[b]odily injury' means substantial physical pain, illness or any impairment of physical condition." On appeal, petitioner argues that the evidence presented below does not meet the statutory definition of "bodily injury" required to convict him of this crime. We disagree.

We have previously held as follows:

---

[3]Petitioner similarly concedes that the transcript could have been used to refresh the witness's recollection under Rule 612 of the West Virginia Rules of Evidence, which governs the use of a writing to refresh a witness's memory. According to petitioner, that rule addresses "an adverse party['s]" options when using a writing to refresh a witness's memory. He further argues that the victim was the State's witness and, thus, the State was required to first designate her as an adverse witness. We note, however, that petitioner did not object to the State's use of the prior testimony for purposes of refreshing the witness's recollection. Prior to the State's motion to declare the witness unavailable, the State engaged in multiple instances of refreshing the victim's recollection. At no point during this exchange did petitioner object on the grounds that the State failed to first have the witness declared adversarial. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we decline to address this issue on appeal.

[4]On appeal, petitioner does not argue that the evidence was insufficient to support his conviction for domestic battery. Accordingly, that conviction is not at issue.

5

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. Seen*, 235 W.Va. 174, 772 S.E.2d 359 (2015). Here, viewing the evidence in a light most favorable to the prosecution, it is clear that sufficient evidence existed to support petitioner's conviction for child abuse resulting in injury. On appeal, petitioner simply asserts that any injuries the victim suffered, such as scrapes, bruises, and soreness, were minor and "do not rise to the level of substantial physical pain, illness, or any impairment of physical condition" sufficient to support his conviction. Petitioner's argument, however, misstates the record and discounts the jury's conclusion that the victim suffered bodily injury as a result of petitioner's attack.

While it is true that the victim testified that she did not experience any "substantial physical pain from [her] injuries" and that none of her injuries were extreme, the jury also heard evidence from Ms. Fisher, the nurse who examined the victim shortly after the attack. According to Ms. Fisher, the victim reported a number of injuries, including a bruise to her left eye, pain in her right lateral chest, joint and neck pain, and difficulty seeing and hearing immediately after the attack. Moreover, the victim testified that petitioner held her by her neck for approximately three seconds such that she was unable to breath and with enough force to leave a thumbprint on her neck. Ms. Fisher corroborated this fact and indicated that the victim told her that, on a scale of one to ten, the force petitioner applied to her neck was equivalent to an eight. As such, it is clear that the jury was presented with sufficient evidence upon which to find that the victim suffered bodily injury. Accordingly, we find petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court abused its discretion in prohibiting him from presenting evidence about an alleged threat by the State made during plea negotiations. According to petitioner, at the preliminary hearing the State indicated that if petitioner did not accept a proposed plea agreement to enter a pretrial diversion program then it would seek an indictment on the felony offense of strangulation. At trial, petitioner sought to introduce evidence in support of this alleged threat to support his defense that the charges against him were the result not of his guilt but of overzealous prosecution. The circuit court, however, ruled that this evidence should be excluded under Rule 403 of the Rules of Evidence. We agree.

At the outset, we decline to adopt petitioner's interpretation of the alleged statement by the State during plea negotiations in this case. Assuming that petitioner is correct that the State

did indicate that it would seek additional charges if a plea agreement was not reached, we note that it is routine for prosecuting attorneys to engage in such negotiations. Indeed, the very basis of plea negotiations is that a criminal defendant agrees to forego trial in exchange for the State's promise to reduce or even dismiss certain charges. *State v. Palmer*, 206 W.Va. 306, 310, 524 S.E.2d 661, 665 (1999) (addressing the requirement that the State fulfill a plea agreement when a defendant's plea is induced upon a promise). While petitioner characterizes the alleged statement as a threat, it is clear that this was more accurately a promise to not seek an indictment on the additional charge of strangulation should petitioner enter into a plea agreement. As such, we decline to accept petitioner's characterization that the State threatened him during the negotiation process by indicating that additional charges could be sought if a plea deal was not reached.

Moreover, we agree with the circuit court that petitioner's attempt to introduce evidence of the plea negotiations would have resulted in unnecessary confusion of the issues at trial. According to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . confusing the issues, misleading the jury. . . ." Simply put, the introduction of this evidence would have unnecessarily confused the issues at trial, given that the prosecution's decision to pursue an additional charge of strangulation does not speak to any essential element of that crime or otherwise provide petitioner a defense to the charge. While petitioner argues that his theory of defense at trial was that "the charges against him were the product of an overreaching prosecution[,]" this theory has nothing to do with the sufficiency of the evidence against him. As such, we find that the circuit court did not err in excluding this evidence.

Finally, petitioner argues that the circuit court erred in denying his motion for a new trial. According to petitioner, he obtained new evidence that, during jury deliberations, the victim's mother was terminated from her employment with the Berkeley County Prosecuting Attorney's office. According to petitioner, the victim's mother "would [have] testif[ied] that she believes she was terminated from employment due to not testifying favorabl[y] for the prosecution at trial." On appeal, petitioner argues that this evidence would have further supported his defense that "the matter was pursued by an overreaching prosecution. . . ." As such, he asserts that it was error for the circuit court to deny his motion for a new trial.[5] We disagree.

We have previously held as follows:

> "A new trial will not be granted on the ground of newly[]discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new

---

[5]In his motion for a new trial, petitioner additionally alleged that the victim "changed her story" and indicated at sentencing that she "didn't tell the whole truth" about the physical altercation at issue. Petitioner also reiterated his assertion that the prosecution pressured the victim and her mother into testifying against him. However, on appeal to this Court, petitioner takes issue only with the circuit court's ruling in regard to his allegation that the victim's mother's firing constituted newly discovered evidence. As such, we will address the circuit court's ruling in regard to this lone issue on appeal.

witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

Syl., *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979). As the circuit court noted below, petitioner failed to provide any affidavits in support of his motion as required. We agree with the circuit court that petitioner's failure to include any supporting affidavits required denial of his motion for a new trial. In short, petitioner simply alleged, without any evidence in support, that the victim's mother was terminated from her employment and would testify that it was a result of her refusal to cooperate with the prosecution in petitioner's criminal trial. As such, petitioner was unable to satisfy the elements necessary to obtain a new trial based on newly discovered evidence, and we find no error in the circuit court's denial of the motion.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 19, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment