563 S.E.2d 802

David A. RINER, Deborah G. Riner and Harlan Run LLC, a West Virginia Limited Liability Company, Plaintiffs Below, Appellants,

v.

H. William NEWBRAUGH; Newbraugh Development Company, Inc.; Newbraugh's Lumber & Building Supply, Inc.; and Dan Ryan Builders, Inc., a Maryland Corporation, Defendants Below, Appellees,

and

James B. Crawford, III, Successor Trustee, Plaintiff Below, Appellee,

v.

David A. Riner, Deborah G. Riner, Harlan Run LLC, Defendants Below, Appellants,

H. William Newbraugh, Defendant Below, Appellee,

and

Newbraugh–Ryan, LLC, Plaintiff/Intervenor Below, Appellee,

v.

David A. Riner and Deborah G. Riner, Defendants Below, Appellants

No. 30087.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 2002.

Decided April 5, 2002.

Richard G. Gay, Nathan P. Cochran, Law Office of Richard G. Gay, Berkeley Springs, West Virginia, Attorneys for the Appellants.

William Richard McCune, Jr., Michelle D. Baldwin, Law Office of William Richard McCune, Martinsburg, West Virginia, Attorneys for the Appellees, H. William Newbraugh; Newbraugh Development Company, Inc., and Newbraugh's Lumber & Building Supply, Inc.

Roger Schlossberg, Schlossberg & Associates, Hagerstown, Maryland, Attorney for the Appellee, Dan Ryan Builders, Inc.

ALBRIGHT, Justice:

Mr. and Mrs. Riner appeal from the March 16, 2001, order of the Circuit Court of Berkeley, denying their motion to alter or amend the judgment entered on February 13, 2001, that pertains to enforcement of a settlement agreement that was reached as a result of a court-ordered mediation. While the Riners signed the Mediation Settlement Agreement, which was prepared by mediator Patrick Henry,[1] the Appellees did not sign that document. The Appellees' counsel prepared and submitted a separate document to the Riners for signature, which was entitled "Settlement Agreement and Release." In its order of February 13, 2001, the trial court directed the Riners to sign the settlement document prepared by the Appellees' counsel. Upon our review of this matter, we conclude that the trial court committed error by requiring the Riners to sign an agreement that differed in substance from the agreement reached as the result of the mediation conference. Accordingly, we reverse and remand this matter for trial, barring further and successful settlement results.

## I. Factual and Procedural Background

Beginning in 1997, the Riners entered into several agreements with the Appellee builder/developers in connection with developing certain farm land owned by the Riners into a subdivision known as Harlan Run. When a dispute arose between the Riners and the Appellees regarding the apportionment of expenses and disbursement of funds relative to Harlan Run, the Riners filed a civil action in the circuit court in which they alleged fraud and breach of fiduciary duty.

On August 14, 2000, the parties participated in an unsuccessful court-ordered mediation conference. Due to the continuing efforts of the mediator and the parties, however, an agreement was reached via the telephone on August 31, 2000. The mediator reduced that agreement to writing and both he and the Riners signed the Media-

---

1. Patrick Henry is a former circuit court judge.

tion Settlement Agreement on September 5, 2000. Although the two-page agreement was immediately transmitted to the Appellees, they chose not to sign that document. The Appellees' counsel prepared a lengthier document that restated certain provisions of the Mediation Settlement Agreement, included other provisions not specifically addressed at the mediation conference, and provided for the mutual release of both existing and future claims related to the Harlan Run venture.

When the Riners refused to sign the separate document prepared by the Appellees–the "Settlement Agreement and Release"–the Appellees filed a motion to enforce the settlement agreement.[2] Two hearings were held on the issue of whether the settlement agreement could be enforced at which testimony was offered by former counsel for the Riners,[3] the Appellees' counsel, Mr. Riner, and the mediator. By order dated February 13, 2000, the circuit court ruled that it could "find no substantive area of disagreement or misunderstanding that was not resolved by the [mediation settlement] Agreement, which appears to the Court to be a valid, fair and enforceable settlement agreement." The lower court, in granting the Appellees' motion to enforce the settlement agreement, ordered that the Riners were to execute the "Settlement Agreement and Release" prepared by the Appellees, and further directed that the parties were to be bound by the terms of such document.

The Riners sought relief from the lower court, but by order entered on March 16, 2001, the circuit court denied their motion to alter or amend the February 13, 2001, judgment. It is from that decision that the Riners now appeal.

## II. Standard of Review

We discussed the appropriate standard of review in *DeVane v. Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999):

> [W]hen this Court undertakes the appellate review of a circuit court's order enforcing a settlement agreement, an abuse of discretion standard of review is employed. *See* Syl. pt. 7, in part, *Smith v. Monongahela Power Co.*, 189 W.Va. 237, 429 S.E.2d 643 (1993) ("The determination of whether a settlement has been made in good faith rests in the sound discretion of the trial court...."). The reason for this deferential standard is that " '[b]oth law and equity favor repose of litigious matters. Compromise by parties of their differences is favored by all courts. When a matter has thus been put at rest, it should not be disturbed except for grave cause.' " *Sanders v. Roselawn Mem'l Gardens*, 152 W.Va. 91, 104, 159 S.E.2d 784, 792–93 (1968) (quoting *Janney v. Virginian Ry. Co.*, 119 W.Va. 249, 252, 193 S.E. 187, 188 (1937)).

205 W.Va. at 527, 519 S.E.2d at 630.

■ This Court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement reached as a result of court-ordered mediation. Accordingly, we proceed to determine whether the lower court abused its discretion in granting the Appellees' motion to enforce the settlement agreement.

## III. Discussion

■ In asking this Court to set aside the lower court's ruling, the Riners argue that the agreement cannot be enforced under the provisions of West Virginia Trial Court Rule 25.14 (hereinafter "Rule" or "Trial Court Rule"). That Rule, which addresses the enforceability of a settlement agreement reached through court-ordered mediation, provides that: "If the parties reach a settlement and execute a written agreement, the agreement is enforceable in the same manner as any other written contract." The Riners contend that since the Appellees never signed the Mediation Settlement Agreement,

---

2. This motion was filed on November 14, 2000.

3. At the time of the hearings, Mr. Arthur Boyce, then counsel for the Riners, had pending a motion to withdraw as their counsel. In his motion seeking permission to withdraw, filed on November 8, 2000, Mr. Boyce indicated "[t]hat the client insists upon pursuing an objective that the lawyer considers imprudent." The trial court granted this motion following the hearings concerning the settlement agreement.

Trial Court Rule 25.14 prevents the agreement from being enforced.

The Riners, in this Court's opinion, read Trial Court Rule 25.14 far too narrowly. Contrary to their contention, we do not believe that Rule 25.14 was intended to prevent the enforcement of settlement agreements reached through mediation that have not been reduced to writing and signed by all the parties. Instead, the Rule extends to the parties to a settlement agreement reached and signed [4] following court-ordered mediation the availability of remedies routinely available for the enforcement of contracts without the correspondent duty of demonstrating the elements of a valid contract. The Rule does not, however, state, or even suggest, that only those settlement agreements that have been reduced to writing following court-ordered mediation and signed by all the parties are subject to enforcement. Thus, in providing for the enforceability of settlement agreements that are reached and signed in a court-ordered mediation conference, West Virginia Trial Court Rule 25.14 does not provide the exclusive means for the enforcement of such settlement agreements. *See also U.S. ex rel. McDermitt, Inc. v. Centex–Simpson Constr. Co.,* 34 F.Supp.2d 397, 399 (N.D.W.Va.1999) (recognizing that "settlement agreement made in open court ... is a valid, enforceable agreement and need not be reduced to writing"), *aff'd,* 203 F.3d 824 (4th Cir. 2000); *see generally* 15A Am.Jur.2d *Compromise and Settlement* § 16 at 737 (2000) (recognizing that "no particular form of agreement and no writing is ordinarily essential to a valid compromise").

■ In those instances where a settlement agreement was reached but not signed by the parties, the agreement may still be enforced provided the parties produce sufficient evidence concerning the attainment of an agreement and the mutually agreed upon terms of the agreement. *See Few v. Hammack Enters., Inc.,* 132 N.C.App. 291, 511 S.E.2d 665, 669–70 (1999) (recognizing that trial court can determine enforceability of settlement agreement where one party refuses to sign Mediation Settlement Agreement by hearing evidence regarding the agreement and its terms). Accordingly, we hold that a settlement agreement reached during, or as the result of court-ordered mediation,[5] which does not fully comply with West Virginia Trial Court Rule 25.14, may be enforced by the circuit court where (1) the parties to the mediation reached an agreement; (2) a memorandum of that agreement was prepared by the mediator, or at his direction, incident to the agreement; (3) the circuit court finds, after a properly noticed hearing, that the agreement was reached by the parties free of coercion, mistake, or other unlawful conduct; and (4) the circuit court makes findings of fact and conclusions of law sufficient to enable appellate review of an order enforcing the agreement.

■ Turning to the issue of whether an agreement was reached between the parties, we look to the four-paragraph summary[6] of the Mediation Settlement Agreement set forth by the lower court in its February 13, 2001, order:

1. The Defendants [Appellees] convey to the Plaintiffs [Riners] all interests in an account held by the Court through the Successor Trustee ... with full rights for the Plaintiff to pursue an accounting of said fund, with the understanding the Plaintiffs will indemnify the Defendants from any liability or loss arising from said accounting.

2. The Defendants shall pay the Plaintiffs the further sum of $79,000.00.

---

**4.** While the Appellees argue that the term "execute," as employed in TCR 25.14, does not have to convey the concept of requiring a signature to a settlement agreement reached through mediation, we reject this argument without further discussion.

**5.** This holding does not apply to matters that are subject to the Rules of Practice and Procedure for Family Court, which specifically require the court's approval of mediated agreements. *See* Fam.Ct.R. 36.

**6.** While the circuit court referred in its February 13, 2001, order to summarizing the agreement reached as a result of the mediation conference, the actual Mediation Settlement Agreement contains only four numbered paragraphs that are almost identical to the so-called "summary" of the agreement set forth by the trial court.

3. The Defendants shall pay all costs of mediation and copying expenses.

4. Plaintiff's [sic] counsel shall prepare the court Orders necessary to carry out the terms of the agreement ... while counsel for the Defendants shall prepare all necessary releases for the benefit of their respective clients.

Whereas the Mediation Settlement Agreement was a short, two-page document, the "Settlement Agreement and Release" prepared by the Appellees for the Riners to sign was a fifteen-page document comprised of eight pages of text and seven signatory pages.

In refusing to sign the "Settlement Agreement and Release," the Riners offered two reasons: (1) delay; and (2) terms differing from those agreed upon and set forth in the Mediation Settlement Agreement. As to the issue of delay, Mr. Riner testified below that the holdup in transmitting the $79,000 settlement payment played a part in his decision not to sign the "Settlement Agreement and Release." Apparently, the month interval between the mediator's preparation of the Mediation Settlement Agreement and the Appellees' preparation and transmittal of the "Settlement Agreement and Release" was longer than Mr. Riner had anticipated the settlement process would take to complete. In its recounting of the testimony regarding the settlement process and fallout, the trial court observed: "[A]ll the Court can conclude is that the Plaintiffs wanted the monies owed them under the Agreement to be paid immediately and when there was the delay of the releases the Plaintiffs revived all the animus that had animated their previous relationship with the Defendants." As to the issue of timeliness in the performance of the Mediation Settlement Agreement, we note that the agreement itself did not contain any time requirement for performance. As a matter of practice, however, we note that specification of a date by which performance of a settlement agreement is to take place is clearly preferable to permitting the breakdown of an agreement on grounds of untimely performance.[7]

According to the Riners, the "Settlement Agreement and Release" prepared by the Appellees contains three paragraphs discussing items that were not a part of the Mediation Settlement Agreement and which were never specifically discussed during the course of the mediation. Those three paragraphs are numbered 5, 6, and 7, and provide that:

5. It is understood and agreed that no further claims will be made for an accounting of Harlan Run, LLC and that Newbraugh Development Company, the manager of Harlan Run, LLC, will proceed at its own expense to the orderly dissolution of Harlan Run, LLC, and shall further be entitled to any proceeds from said dissolution to the exclusion of any claims by the Riners, including any claims involving real estate or sums of money which claims, if any, are specifically assigned by the Releasors to Newbraugh Development Company. To the extent that proceeds from sales of Harlan Run properties are distributed pursuant to this Release, each party receiving any such proceeds shall be responsible for his own tax liabilities from each such distribution.

6. It is understood and agreed that both the expense of the dissolution of Harlan Run and any benefits which accrue from that dissolution are hereby assigned by the Releasors to Newbraugh Development Company.

7. It is understood and agreed that by virtue of this Settlement Agreement that no further claims can or shall be made by the Releasees, by the Releasors or by Harlan Run, LLC with regard to the conveyance of property from the Riners to Harlan Run, LLC; the formation of Harlan Run, LLC; the formation and carrying out of the operating agreement of Harlan Run, LLC; the execution and carrying out of the real estate option agreement dated

---

7. Both in their brief and during oral argument, the Appellees' counsel went to great length to downplay the issue of delay. While we take no position as to the approximately one-month period between the transmittal of the original settlement agreement and the return transmittal of the agreement and release prepared by the Appellees, we do observe that better communication between both parties on the status of the agreement and release might have alleviated, to some degree, the ensuing dissension among the parties.

June 4, 1997; the entering into and carrying out of the development agreement dated April 16, 1997; the sale of the property in question to Clifford A. Riner and its subsequent assignments to Dan Ryan Buildings, Inc. and to Newbraugh–Ryan, LLC, and the conduct of business between the Releasees with regard to Harlan Run under any circumstances and for any reason.

In response to the Riners' argument that these three paragraphs address matters that were not discussed at the mediation conference or included in the Mediation Settlement Agreement, the Appellees maintain that these matters were impliedly included in the settlement agreement as the purpose of settlement was to fully resolve the underlying litigation. In proof of this point, the Appellees subpoenaed the mediator and the trial court questioned him as to the extent of the agreement:

THE COURT: There obviously has been a release prepared beyond the date of the settlement agreement in the case. The parties are alleging, primarily the Plaintiffs ..., that certain terms within that settlement agreement and releases go beyond the pale, go beyond the original agreement that was dated the 5th day of September of 2000, and either embrace new material or work a greater or different settlement than envisioned in your September 5th document, you're aware of that?

THE WITNESS: I am aware of that.

THE COURT: You are unaware of any particulars as to what alleged maybe [sic] larger ambit of the proposed settlement agreement release that was prepared by the Defendants?

THE WITNESS: I am guessing because I know what the nature of the lawsuit was, essentially involved dissolution of a business entity existing between the Newbraughs and the Riners. Because of that I anticipated there was going to be probably a pretty substantial release that both sides were going to want to make sure that neither one of them could throw rocks at them in the future.

Relying heavily on the mediator's rock throwing allusion, the Appellees contend that this testimony supports their position that the settlement agreement was to be an all-inclusive type of agreement that would prevent any further litigation concerning the Harlan Run venture. The trial court, in making its ruling, obviously relied upon the mediator's testimony:

In testimony given before the Court, the mediator[,] Mr. Henry[,] stated that this simple and straight-forward agreement was meant by the parties to totally resolve their relationship and the lawsuits pending between them, and to make sure that neither was in a position to "throw rocks" at the other afterwards. In other words, to insure a clean break.

While the trial court's questioning of the mediator ensued due to his presence having been secured by subpoena, we question the wisdom of permitting the mediator to testify in the fashion allowed in this case. To the mediator's credit, he informed the trial court prior to his testimony that the trial court rules prohibit him from subsequently testifying for trial purposes. *See* W.Va.T.C.R. 25.12 (stating that "mediator may not be subpoenaed or called to testify or otherwise be subject to process requiring disclosure of confidential information in any proceeding relating to or arising out of the dispute mediated"). He did acknowledge, however, that a mediator can be called to testify to the generalized issue of whether an agreement has been reached.[8] While it does not appear that

---

8. While the mediator informed the trial court that "there is a case which counsel have cited with respect to the fact that a mediator can be called as a witness to determine whether or not, in fact, an agreement was reached," that case was not cited by the parties to this Court. *But See Few,* 511 S.E.2d at 669–70 (applying N.C. Rule 52 regarding court-ordered arbitration and finding that in limited context of proceeding before judge to determine issue of whether settlement agreement was reached and terms of agreement, mediator can testify). We note, additionally, that Appellant's counsel observes that the issue of whether it was proper to permit the mediator to testify "was apparently not raised below."

the mediator disclosed any confidential information through his testimony, and neither party has raised such a claim, the trial court's questioning of the mediator went beyond the basic issue of whether in fact an agreement was reached and identifying the terms of that agreement. The trial court clearly questioned the mediator on the ultimate issue of whether the "Settlement Agreement and Release" should be enforced despite the inclusion of terms that were not in the Mediation Settlement Agreement. While we do not approve of the trial court's entire line of questioning of the mediator, we do not find a violation of TCR 25.12 due to the non-disclosure by the mediator of confidential information discussed during the mediation process.

■ Returning to the issue of whether paragraph numbers 5, 6, and 7 contain terms to which the parties did not agree, we are mindful of the fact that " '[a] meeting of the minds of the parties is a *sine qua non* of all contracts.' " Syl. Pt. 1, *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.*, 157 W.Va. 93, 199 S.E.2d 308 (1973) (quoting Syl. Pt. 1, *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859 (1932)). We stated further in *O'Connor v. GCC Beverages, Inc.*, 182 W.Va. 689, 391 S.E.2d 379 (1990): "It is well-understood that '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties.' 15A C.J.S. *Compromise & Settlement* § 7(1) (1967)." 182 W.Va. at 691, 391 S.E.2d at 381.

While there may have been a meeting of the minds by the parties as to the terms reflected in the four paragraphs of the Mediation Settlement Agreement, there was not a meeting of the minds with regard to the terms that are specified in paragraph numbers 5, 6, and 7 of the "Settlement Agreement and Release." Absent this critical and necessary contractual element, we cannot require the Riners to sign a document that contains terms that were not part of the original agreement. Accordingly, we find that the lower court committed error in directing the Riners to sign the "Settlement Agreement and Release" and further, in ruling that they were to be bound by the terms of such agreement.

The Appellees' analogy of the case at bar to the situation present in *McDermitt* is inapposite. In *McDermitt,* the plaintiff refused to sign the settlement agreement prepared by defense counsel based on the inclusion of a confidentiality clause and standardized release language. Although the appellate court did strike the confidentiality clause, the remainder of the agreement was enforced based on the fact that there was "no evidence of any dispute as to the existence of an agreement, material terms of the agreement, or authority of counsel to enter the agreement...." 34 F.Supp.2d at 401. Unlike *McDermitt,* where the release provisions were viewed as ancillary, this case presents a clear dispute as to "material terms of the agreement." *Id.* For the Appellees to suggest that paragraphs 5, 6, and 7 represent nothing more than standardized release language is specious, as those paragraphs clearly address additional substantive terms and not mere procedural fine points.

■ Equally unconvincing is the Appellees' suggestion that public policy dictates that the agreement their counsel prepared must be enforced. Citing the proposition that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation," the Appellees suggest that the Riners must be made to "follow through" on the bargain reached in this case lest the proverbial floodgates of litigation be permanently opened. Syl. Pt. 1, in part, *Sanders v. Roselawn Mem'l Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968). In citing *Sanders,* the Appellees appear not to appreciate the significance of the second-part of syllabus one, which recognizes that "it is the policy of the law to uphold and enforce such contracts [of compromise] if they are fairly made and

are not in contravention of some law or public policy." *Id.* at 91, 159 S.E.2d at 785, syl. pt. 1, in part. In making their argument predicated on public policy the Appellees clearly overlook the compelling policy argument raised by the Riners concerning the effect on the court-ordered mediation process, as a whole, were this Court to compel them to be bound by a settlement agreement that contains terms addressing substantive matters beyond the four corners of the agreement reached as a result of the mediation process.

██ While the result may not be quite as dire as the Riners suggest in arguing that an "in terrorem" effect will surround the mediation process if we affirm the trial court, we do recognize that the mediation process will only work where the parties are ensured that the process is fair to both sides and where the attainment of settlement is viewed as non-compulsory. *See* W.Va. T.C.R. 25.11 (stating that "[n]o party may be compelled by these rules, the court, or the mediator to settle a case involuntarily or against the party's own judgment or interest"). Upon the facts of this case, public policy clearly does not compel the enforcement of the "Settlement Agreement and Release," given that document's inclusion of terms that differ in substance from those set forth in the Mediation Settlement Agreement.

Based on the foregoing, the decision of the Circuit Court of Berkeley County is hereby reversed and this matter is remanded for further proceedings.

Reversed and remanded.