# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Betty Parmer,**
**Defendant Below, Petitioner**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 20-0013** (Monongalia County 17-C-210)

**United Bank, Inc.,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner Betty Parmer, by counsel S. Sean Murphy, appeals the Circuit Court of Monongalia County's December 6, 2019, order enforcing the parties' settlement agreement. Respondent United Bank, Inc., by counsel Shawn P. George, Jennie Ovrom Ferretti, and J. Michael Benninger, filed a response and supplemental appendix.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Parmer and United Bank, Inc. ("United") have been involved in various lawsuits related to a $2.5 million loan Ms. Parmer obtained from United and on which she later defaulted. In one lawsuit, assigned Civil Action No. 14-C-374, United was granted summary judgment on Ms. Parmer's negligence, breach of fiduciary duty, and civil conspiracy claims, and the circuit court's order directed that the "[p]arties shall bear their own costs and fees." Ms. Parmer appealed, and this Court affirmed in *Brozik v. Parmer*, Nos. 16-0292, 16-0400, 16-0238, 2017 WL 65475 (W. Va. Jan. 6, 2017)(memorandum decision).

Subsequent to that litigation, Ms. Parmer was required to pay the loan balance. United applied certain collateral to the loan, and Ms. Parmer wired $606,961.62 to United to satisfy the remaining principal, interest, and charges. Following receipt of the wire transfer, United informed Ms. Parmer that it was calculating its attorney's fees and would submit a demand for payment the following week, as provided for under the loan documents. United made a demand for payment on April 11, 2016, but Ms. Parmer did not pay the outstanding fees, and the instant litigation ensued.

1

In United's complaint and motion for declaratory judgment, it alleged that Ms. Parmer pledged shares of United stock, among other assets, as security for the loan; that the commercial loan agreement signed by Ms. Parmer obligated her to pay United's reasonable attorney's fees; and that United was authorized under that agreement to liquidate collateral and apply the proceeds to, among other things, attorney's fees. Accordingly, United sought "a declaratory judgment authorizing the collection, payment and satisfaction of attorneys' fees, costs and expenses incurred by [it] in prior litigation, as well as in this litigation, and the liquidation of a stock certificate held by United as collateral for a loan to [Ms. Parmer]." United stated that its fees as of January 31, 2017, totaled $294,956.48.

Ms. Parmer filed an answer to United's complaint and counterclaimed for breach of contract, conversion, and "violation of statute." In support of her breach of contract claim, Ms. Parmer alleged that United failed to provide her with a statement of the claimed attorney's fees, that it engaged in collection activities that were in contravention of the loan agreement and/or applicable law, and that it attempted and continues to attempt to force Ms. Parmer to pay for costs/expenses United has no right to collect. To support her conversion counterclaim, Ms. Parmer asserted that United took her valuable assets, exercised dominion and control over them, and converted them. Finally, Ms. Parmer claimed that United violated the "Uniform Commercial Code and/or other statutes" in its collection efforts.

In July of 2017, United moved to dismiss Ms. Parmer's counterclaims. Following a hearing, the circuit court granted United's motion by order entered on December 12, 2018. In its order, the court detailed that Ms. Parmer failed to file a response to the motion in the nearly one and a half years it had been pending. Further, the court found that the hearing on the motion to dismiss was properly noticed by United's service of a notice of hearing by regular mail and e-mail on November 1, 2018; yet, neither Ms. Parmer nor her counsel appeared for the hearing.[1] The court also found that Ms. Parmer could not prevail on any of her counterclaims. First, she had not shown that United failed to comply with any term of the loan documents between the parties. Second, Ms. Parmer's conversion claim failed because she voluntarily pledged the stock to United as collateral for the loan. Third, Ms. Parmer had yet to specifically identify any statute United violated.

Later in November of 2018, United moved for summary judgment. United noted the prior litigation involving Ms. Parmer's default on the loan and in which it was granted summary judgment, and it outlined the relevant portions of the parties' commercial loan agreement entitling United to the attorney's fees it incurred in protecting, defending, and collecting on its rights with respect to the loan. United claimed entitlement to declaratory judgment in the amount of $294,956.48 related to the prior litigation, plus $25,000 in expenses, interest, costs, and attorney's fees in the current litigation. United also sought a declaration that it was authorized to liquidate the stock certificate and apply the proceeds to the amounts claimed.

---

[1] The record also shows that neither Ms. Parmer nor her counsel appeared on March 15, 2018, for the hearing at which the motion to dismiss was initially to be heard. That hearing was continued to the following week, but Ms. Parmer and her counsel again failed to appear.

Ms. Parmer filed a response and supplemental response to United's motion for summary judgment. In her supplemental response, Ms. Parmer argued that United's claim for attorney's fees was barred by res judicata in light of the order in No. 14-C-374 directing each party to bear their own costs and fees. Ms. Parmer also argued that United was collaterally estopped from seeking its attorney's fees and had waived any claim for its fees.

Additionally, Ms. Parmer moved for relief from the court's order dismissing her counterclaims under Rule 60(b) of the West Virginia Rules of Civil Procedure.[2] Ms. Parmer argued that her counsel's failure to appear for the hearing was due to "mistake, inadvertence, surprise and excusable neglect" stemming from a "severe medical condition" necessitating "immediate surgical intervention" in May of 2018. Counsel represented that, following surgery, he was on medical leave through the end of July of 2018. Ms. Parmer's counsel also cited the relocation of his office as a basis for relief from judgment.

The parties appeared for a hearing on United's motion for summary judgment and Ms. Parmer's motion for relief from the order dismissing her counterclaims on March 4, 2019.[3] The court directed the parties to mediate and stated that it would hold United's motion for summary judgment in abeyance pending mediation. The court denied Ms. Parmer's Rule 60(b) motion, noting that the ruling on United's motion to dismiss her counterclaims would have been the same had counsel appeared for the hearing.

The parties engaged in mediation on April 4, 2019, and they reached a resolution. In relevant part, the four-page, handwritten settlement agreement signed by the parties, their counsel, and the mediator set forth that Ms. Parmer agreed to pay United $212,500 within ten days "in immediately available funds." Upon receipt of those funds, United agreed to provide to Ms. Parmer's counsel the United stock certificate at issue. The parties further agreed to execute mutual general and full releases, which were to include, but not be limited to,

> any and all claims, complaints, causes of actions, counterclaims, crossclaims, third party complaints which were or could have been asserted at anytime [sic], whether in this or any other action, proceeding or forum arising or related to, directly or indirectly, any loan, pledge, agreement or transaction involving, including[,] by, between or among the parties[,] their agents, employees, representatives and attorneys, in any capacity.

Also, the settlement agreement and mutual release was to be prepared by United's counsel within five days of the mediation.

---

[2] "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause . . . ." W. Va. R. Civ. P. 60(b).

[3] Additionally, the court had issued a rule to show cause directing Ms. Parmer's counsel to explain his failure to appear at the hearing on United's motion to dismiss the counterclaims. Ms. Parmer's counsel represented that he had been ill, that he "dropped the ball," and that he should have notified opposing counsel and the court of his change in address.

In accordance with the parties' settlement agreement, counsel for United e-mailed to Ms. Parmer's counsel a draft settlement agreement and release on April 9, 2019, five days after the settlement was reached. Counsel for United also requested that Ms. Parmer's counsel confirm that the draft settlement document was acceptable. In addition to the terms set forth above, United added the following language, the "Hypothecation Agreement provision," to the end of the paragraph addressing the parties' mutual and full releases:

> United and Parmer acknowledge and confirm this Settlement Agreement does not and shall not be interpreted to release, affect, waive, compromise, or limit in any way the liens, financing statements, or rights United possesses under and by virtue of the Hypothecation Agreement and associated documents in and to the assets of Secure US, which Parmer purchased and subsequently transferred and/or sold. In every respect these liens, financing statements and United's rights under the Hypothecation Agreement and associated documents are intact and unaffected by this Settlement Agreement and no rights therein have been altered, waived, compromised, or released.

Two days after receiving the draft settlement agreement and release, on April 11, 2019, Ms. Parmer's counsel e-mailed United's counsel requesting wire transfer instructions. The instructions Ms. Parmer's counsel received in response on that same day directed that the settlement funds be wired as follows:

Chase Bank
5906 Wesley st,
Greenville Tx 75401

ABA/Routing #: 111000614
Account #:      327882368

Beneficiary
CB VENTURES
9750 royal lane
Dallas Texas 75231[4]

Also on that same day, United's counsel informed the circuit court by e-mail that a settlement had been reached and an agreed dismissal order would be submitted soon. Ms. Parmer's counsel was copied on this e-mail. On April 15, 2019, Ms. Parmer's counsel directed Ms. Parmer's bank to wire settlement funds to United, in accordance with the wiring instructions purportedly e-mailed to Ms. Parmer's counsel from United's counsel.

On May 2, 2019—more than three weeks after receiving the draft settlement document, exactly three weeks after Ms. Parmer's counsel requested wire transfer instructions from United's

---

[4] These instructions differed from those provided by United to Ms. Parmer following resolution of the earlier matter that required her to wire $606,961.62 to United.

counsel, and approximately two and a half weeks after attempting to wire the settlement funds to United—in response to United's counsel inquiring as to the status of the settlement funds, Ms. Parmer's counsel raised issue with the Hypothecation Agreement provision. Ms. Parmer's counsel stated that the language "was not part of the agreement at the mediation," and he requested that the language be removed. Ms. Parmer's counsel also informed United's counsel that the funds were wired on April 15, 2019, as instructed by United's counsel. Ms. Parmer's counsel provided United's counsel with the e-mailed wire transfer instructions United's counsel had purportedly sent. United's counsel reviewed those instructions and informed Ms. Parmer's counsel that he did not send them. At this point, the parties discovered that an unknown individual or individuals intervened in the parties' counsels' e-mail communications using United counsel's identical e-mail address and an e-mail address nearly identical to Ms. Parmer's counsel's address to provide fraudulent wire transfer instructions to Ms. Parmer's counsel, who acted upon those instructions and directed Ms. Parmer's bank to wire funds to CB Ventures, an entity that is not United or affiliated with United.

United moved to enforce the settlement agreement on June 5, 2019. United detailed that Ms. Parmer's attorney claimed that the settlement monies had been wired, but United had not received the funds. Rather, the funds had been wired to an unknown third-party, with whom United had no connection. Thus, United stated that the settlement reached at mediation had not been consummated or concluded, and it sought an order enforcing it.

Ms. Parmer countered with a motion to enforce the settlement agreement. Ms. Parmer claimed that she fully performed under the settlement agreement, that responsibility for the improperly wired funds fell on United, and that United had yet to deliver the stock certificate, as required by the settlement agreement. Ms. Parmer also argued that the Hypothecation Agreement provision contradicted the terms agreed upon at mediation.

The circuit court held a hearing on the counter motions to enforce the settlement agreement on August 8, 2019. The court granted United's motion and denied Ms. Parmer's. In its resulting August 14, 2019, order, the court directed Ms. Parmer to transfer $212,500 to United, to submit proof of remittance to the court within thirty days of the order's entry, and to sign the settlement agreement and release previously submitted to her counsel within five days of the order's entry.

On December 4, 2019, the parties appeared for a hearing regarding the settlement document because the court did not previously resolve the issue concerning the Hypothecation Agreement provision. Ms. Parmer argued that she is a pledgor under the Hypothecation Agreement and the additional language leaves her liable for the loan that is the subject of that agreement, while United argued that the

> mediation agreement says the parties are going to execute full and complete mutual releases, which the settlement agreement does. . . . That language was put in there because of other pending litigation that United has that includes some of these documents. It has nothing to do with Mrs. Parmer, claims against Mrs. Parmer. The mediation fully and completely and mutually resolved all claims.

5

United maintained that the Hypothecation Agreement provision was not inconsistent with the mediation settlement agreement and that "United Bank has never taken the position that Mrs. Parmer isn't released under the [H]ypothecation [A]greement or the collateral agreement. This mutual release does that. It simply doesn't release anybody else."

The court found that Ms. Parmer, by wiring (or attempting to wire) the settlement funds after receipt of the draft settlement agreement and release and failing to raise her objection for three weeks after receipt of that document, accepted the terms of the settlement agreement and release. The court ordered that counsel for United again submit a signed settlement agreement and release to counsel for Ms. Parmer. Ms. Parmer was directed to sign the settlement document within ten days of receipt; should Ms. Parmer fail to do so, the court ordered that the settlement agreement and release be adopted "given [Ms. Parmer's] previous actions and this [c]ourt's previous rulings." The court's dismissal order, entered on January 13, 2020, reflects that, to the court's knowledge, Ms. Parmer had not executed the settlement agreement and release; thus, the court deemed the document adopted. Ms. Parmer now appeals.

Ms. Parmer raises four assignments of error on appeal. First, she claims that the circuit court erred in enforcing the settlement agreement. Second, she asserts that the court erred in directing her to pay $212,500 to United. Third, Ms. Parmer argues that the court erred in enforcing United's underlying claims as they were barred by res judicata, collateral estoppel, and waiver. Fourth, she claims that the court erred in holding an improperly noticed hearing on United's motion to dismiss her counterclaims.[5]

Ms. Parmer's first and second assignments of error relate to the circuit court's enforcement of the parties' settlement agreement. By filing her own motion to enforce the settlement agreement below, Ms. Parmer acknowledged that the parties reached an agreement; however, she takes issue with the circuit court's enforcement of that agreement in United's favor. Specifically, she argues in her first assignment of error that the court erred in enforcing the settlement agreement and release prepared by United because it included the Hypothecation Agreement provision and, therefore, there was no meeting of the minds. She also argues that the court failed to make findings of fact and conclusions of law sufficient to enable appellate review. Ms. Parmer supports her arguments by reference to *Riner v. Newbraugh*, 211 W. Va. 137, 563 S.E.2d 802 (2002), claiming that "[s]eldom does one find an opinion that so perfectly parallels" a case on appeal.

---

[5] Ms. Parmer also asserts that, at the hearing on United's motion to dismiss, the circuit court "engag[ed] in communications with counsel for [United] wherein she coached them on what to do in this matter." Not only does a review of the transcript of that hearing fail to support Ms. Parmer's assertion, but she also fails to provide any argument or legal analysis in support of this claimed error. As we have repeatedly warned, this Court does not review inadequately briefed assignments of error. *See, e.g.*, *State ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (citation omitted) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *State v. Allen*, 208 W. Va. 144, 162, 539 S.E.2d 87, 105 (1999) (citation omitted) ("In the absence of supporting authority, we decline further to review this alleged error because it has not been adequately briefed."). We decline to reverse course here, particularly where neither the error itself nor its significance is clear.

In her second assignment of error, Ms. Parmer argues that the court further erred in granting United's motion to enforce the settlement insofar as she was required to "again" pay $212,500, particularly where no evidentiary hearing was conducted. Ms. Parmer highlights that her counsel relied on wire transfer instructions from United's counsel's actual, known e-mail address and that her counsel "neither received e-mails from nor corresponded with unknown or fraudulent e-mail addresses," unlike United's counsel. Because United's counsel interacted with the imposter, Ms. Parmer claims that United's counsel was in the best, and only, position to prevent the fraud.

Our review of the circuit court's order enforcing the settlement agreement in United's favor is for an abuse of discretion. *See id.* at 138, 563 S.E.2d at 803, syl. pt. 1 ("This Court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement reached as a result of court-ordered mediation.").

In *Riner*, a dispute arose between the Riners, who owned land, and a builder/developers, who sought to develop that land. 211 W. Va. at 139, 563 S.E.2d at 804. The parties did not reach a resolution during court-ordered mediation, but negotiations continued, and a settlement was reached over the phone two weeks after mediation. *Id.* The mediator, who was involved in the telephonic settlement, prepared one settlement agreement, and the builder/developers prepared another, which contained terms to which the parties did not agree. *Id.* at 139-40, 563 S.E.2d at 804-05. The Riners refused to sign the agreement prepared by the builder/developers, but the circuit court ordered them to execute it. *Id.* at 140, 563 S.E.2d at 805. On appeal, we found that the circuit court erred in directing the Riners to sign the settlement agreement prepared by the builder/developers due to its inclusion of terms to which the parties did not agree. *Id.* at 144, 563 S.E.2d at 809.

In claiming that *Riner* closely parallels the facts of this case and militates in favor of enforcing the settlement agreement according to Ms. Parmer's terms, Ms. Parmer overlooks two critical differences between her case and *Riner*. First, the Riners objected immediately to signing the settlement documents prepared by the builder/developers. Ms. Parmer, by contrast, waited three weeks before raising her objection. Second, no money changed hands in *Riner*. Here, Ms. Parmer paid the settlement monies, albeit to the wrong party.

These critical differences, coupled with the chronology of these distinguishing events, demonstrate that the court did not abuse its discretion in enforcing the settlement in United's favor. The parties agreed that United would prepare a formal settlement agreement and release within five days of the parties' mediated settlement. United complied with that term, submitted the draft settlement document to Ms. Parmer's counsel, and alerted the circuit court to the parties' settlement and to the fact that a dismissal order would be forthcoming. Ms. Parmer did not dispute United's representations to the court or claim that the formal settlement agreement and release contained a term that varied in any material respect from the agreement reached at mediation, despite having ample opportunity to do so. Instead, she demonstrated her acceptance of the

settlement terms documented by United by complying with the next agreed-upon deadline: the wire transfer deadline.[6]

With respect to that attempted wire transfer, we likewise find no abuse of discretion in the court's enforcement of the settlement agreement as it relates to the payment of $212,500. Under the rule applied by the circuit court, the "imposter rule," "the party who was in the best position to prevent the forgery by exercising reasonable care suffers the loss." *Arrow Truck Sales, Inc. v. Top Quality Truck & Equip., Inc.*, No. 8:14-cv-2052-T-30TGW, 2015 WL 4936272, *5 (M.D. Fla. Aug. 18, 2015).[7] Ms. Parmer suggests that United was actually in the best position to prevent this fraud, but she does not explain how. In reality, had Ms. Parmer or her counsel exercised reasonable care and verified the wire transfer instructions her counsel received, the loss could have been averted. The wire transfer instructions were plainly suspect in that they directed payment to a Chase Bank in Texas for the benefit of CB Ventures, an entity uninvolved in the parties' dealings and unknown to United. The parties' dealings date back to 2014 and involve one prior wire transfer directly to United in West Virginia, not an uninvolved, outside entity. As a result, we find no error in the circuit court's conclusion that Ms. Parmer must bear this loss or its direction that she remit the settlement funds to United.[8]

Finding no error in the circuit court's enforcement of the parties' settlement agreement in United's favor, and reiterating that Ms. Parmer does not dispute that the parties reached a settlement, we need not address the substance of her third and fourth assignments of error. In her third, Ms. Parmer argues that the court erred in enforcing United's claims, but she waived her ability to contest those claims by settling with United. Likewise, by settling, Ms. Parmer waived her claim of a purported procedural error in noticing the hearing on United's motion to dismiss, addressed in her fourth assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

---

[6] While Ms. Parmer claims that the circuit court's order contained insufficient findings of fact and conclusions of law to permit appellate review, she has not demonstrated that any error in this regard is reversible error. Furthermore, the circuit court's bases for its rulings relative to the settlement agreement *are* sufficiently developed for this Court's review. Indeed, Ms. Parmer identifies no specific deficiencies.

[7] Although this Court has not adopted the "imposter rule," we find no error in the circuit court's utilization of it because the parties agreed to and argued for its application below. Given this position, we need not decide now whether to adopt that rule or articulate its parameters here.

[8] Like Ms. Parmer's claim that the circuit court's order was inadequate, her claim that the court should have conducted an evidentiary proceeding is not well taken. The circuit court held a hearing on the issue, and, in any event, Ms. Parmer does not identify any evidence she would have presented at a proceeding formally designated as "evidentiary" that she did not present or was unable to present at the court's hearing on the parties' respective motions to enforce the settlement.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison