IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

October 28, 2024

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

DAMON MCDOWELL, MARY MCDOWELL,
AND DEEANNA RAE LAWSON,
Plaintiffs Below, Petitioners

v.) No. 23-ICA-406      (Cir. Ct. of Fayette Cnty. Case No. CC-10-2019-C-129)

ALLSTATE VEHICLE & PROPERTY
INSURANCE CO.,
Defendant Below, Respondent


MEMORANDUM DECISION

Petitioners appeal the August 14, 2023, order of the Circuit Court of Fayette County granting Respondent's Motion to Enforce Settlement. Respondent Allstate Vehicle & Property Insurance Company ("Allstate") filed a response in support of the circuit court's order. Petitioners filed a reply.[1] There are three issues on appeal: whether the parties reached a meeting of the minds sufficient to create a binding settlement agreement, whether the circuit court should have held an evidentiary hearing prior to granting Respondent's Motion to Enforce Settlement, and whether this was a "mediated" settlement which failed to satisfy the requirements of the West Virginia Trial Court Rules regarding mediation.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.[2]

Petitioners Damon McDowell and DeeAnna Rae Lawson are co-owners of a tract of land located in Oak Hill, West Virginia, and the dwelling erected thereon. Petitioner Mary McDowell is the wife of Damon McDowell and owned some personal property kept in the dwelling. Respondent Allstate insured this dwelling and its contents pursuant to a policy issued in 2019. On June 20, 2019, a fire destroyed the dwelling and its contents. This fire was ultimately determined to be an act of arson. Petitioners filed an insurance

---

[1] The petitioners are represented by Erwin L. Conrad, Esq. Respondent Allstate is represented by Brent K. Kesner, Esq. and Ernest G. Hentschel, II, Esq.

[2] On September 17, 2024, this Court heard Rule 19 oral argument by counsel, in person.

1

claim with Allstate, which was denied.[3] On September 18, 2019, Petitioners filed their complaint in circuit court, alleging breach of contract and unfair trade practices.

The parties filed cross-motions for summary judgment and the circuit court awarded summary judgment to Allstate. Petitioners appealed that ruling to the Supreme Court of Appeals of West Virginia. On November 17, 2022, the Court issued an opinion reversing the circuit court's order awarding summary judgment to Allstate and remanded the matter for further proceedings. *See McDowell v. Allstate Vehicle and Prop. Insur. Co.*, 247 W. Va. 536, 881 S.E.2d 447 (2022).

Upon remand, the circuit court directed the parties to participate in mediation, which began on March 2, 2023, with a meeting at the office of Allstate's counsel and continued with discussions by phone and e-mail. On March 30, 2023, at 3:36 p.m., the mediator (Charles S. Piccirillo, Esquire) sent an e-mail to the parties' respective counsel, stating that the parties had reached a settlement agreement on all claims. The e-mail set forth the "basic material terms of the settlement" as follows:

1.  The settlement will be without admission of any liability by Defendant, Allstate Vehicle and Property Insurance Company ("Defendant" or "Allstate"), which expressly denies liability;
2.  The Defendant will pay to the Plaintiffs the sum of $100,000.00;
3.  The above captioned civil action will be dismissed, with prejudice, and with each party paying his, her or its own costs and attorney fees;
4.  Plaintiffs will execute and deliver a full and final broad form release of all claims, contractual or extra-contractual against Allstate, its agents and employees;
5.  Definitive settlement documents in a form satisfactory to counsel will be prepared and entered into; provided, however, the settlement agreement and release ("SAR") will include a confidentiality provision with customary exceptions for accountants, tax advisors, insurers, reinsurers, regulators, disclosures required by law, subpoenas and Court Orders, but will not include "claw-back" or liquidated damage provisions;
6.  The defendant will pay the costs of mediation;
7.  The settlement will be concluded by 4/14/23, meaning SAR executed and returned, final order of dismissal approved by counsel and submitted to the Court for entry and settlement proceeds paid over by 4/14/23.

The e-mail closed with the following paragraph:

_____

[3] Although not relevant to this appeal, Allstate rescinded the relevant insurance policy based upon its determination that there had been a misrepresentation in the insurance application concerning the condition and occupancy of the dwelling. *See McDowell v. Allstate Vehicle and Prop. Ins. Co.*, 247 W. Va. 536, 539, 881 S.E.2d 447, 450 (2022).

If you agree that this represents the basic material terms of the settlement achieved in this matter, I would ask that you so indicate on behalf of your respective clients and yourselves by "replying to all" with an affirmative statement that you and your clients agree. This email and your responses will form our mediation settlement agreement. If you believe I have misstated the settlement or omitted material terms, please weigh in as soon as possible.

Shortly thereafter, at 4:01 p.m., Allstate's counsel replied to the mediator's email, noting that he could not request a settlement check until opposing counsel provided him with a W-9 form. He also indicated that the SAR would need to have language in the confidentiality provision indicating that Allstate would not be limited in its ability to cooperate with state and federal officials or others as it related to the investigation which gave rise to the complaint, noting that Allstate's cooperation was required by law. Allstate's counsel stated that such language would appear in the SAR he was drafting, and that Allstate could not execute a SAR that was inconsistent with its legal duties and obligations.

The next day, on March 31, 2023, at 9:09 a.m., petitioners' counsel sent an e-mail responding to the prior day's e-mails from the mediator and Allstate's counsel. This e-mail stated: "I received the 3:36 and 4:01 Ems this morning. My client[s] do agrees [sic] to the settlement as outlined IN [sic] Charlie's em." The e-mail from petitioners' counsel further stated that a W-9 form would be forwarded to Allstate's counsel that day and that the settlement check should be made out to Damon McDowell, Mary McDowell, Deeanna Lawson and Conrad & Conrad, PLLC. In this e-mail, petitioners' counsel did not object to the SAR language required by Allstate concerning its duty to cooperate with government investigations. However, at 9:28 a.m., petitioners' counsel sent a second e-mail in which he stated that he did not agree to Allstate's proposed language regarding cooperation with state and federal agencies.

The parties exchanged competing versions of the SAR language but could not agree on a mutually acceptable wording for the confidentiality provision. Petitioners also failed to submit a W-9 so that payment of the settlement could be processed. By letter dated April 20, 2023, the mediator reported to the circuit court that mediation had been unsuccessful.

On or about July 6, 2023, Allstate filed a Motion to Enforce Settlement, arguing that the March 2023 e-mails between the parties established a binding settlement of the case. Allstate also argued that petitioners' continued resistance to certain language in the SAR regarding Allstate's cooperation with state and federal authorities did not prevent enforcement of the agreed settlement because neither party could contract away Allstate's legal obligation to cooperate with authorities under West Virginia Code § 15A-10-6 (2020).[4] Opposing counsel filed a response to the motion, arguing that there was no mutual assent between the parties and, thus, no enforceable settlement.

_____

[4] W. Va. Code § 15A-10-6 provides, in part, that:

3

On August 14, 2023, the circuit court held a hearing on the motion during which it informed the parties it had reviewed the matter and concluded that there was a meeting of the minds between the parties regarding the terms of settlement as represented in the parties' e-mail exchange of March 30 and March 31, 2023. The circuit court refused to conduct an evidentiary hearing, permitting only argument and proffer from counsel related to the motion and disputed release language. In an order dated August 14, 2023, the circuit court found that the mediator's email on March 30, 2023, at 3:36 p.m. (which set out the material terms of the agreement), and the e-mail sent by petitioners' counsel on March 31, 2023, at 9:09 a.m. (accepting those terms) constituted an agreement between the parties which settled all the claims in dispute.

---

(a) The State Fire Marshal or any deputy or assistant fire marshals under the authority of the fire marshal may request any insurance company investigating a fire loss of real or personal property to release any information in its possession relative to that loss. The company shall release the information and cooperate with any official authorized to request such information pursuant to this section. The information shall include, but not be limited to:

(1) Any policy in force;
(2) Any application for a policy;
(3) Premium payment records;
(4) History of previous claims; and
(5) Material relating to the investigation of the loss, including statements of any person, proof of loss, and any other relevant evidence.

(b) Any insurance company shall notify the State Fire Marshal if it has reason to believe, based on its investigation of a fire loss to real or personal property, that the fire was caused by other than accidental means. The company shall furnish the State Fire Marshal with pertinent information acquired during its investigation and cooperate with the courts and administrative agencies of the state, and any official mentioned, or referred to, in subsection (a) of this section . . .

(e) Any official mentioned, or referred to, in subsection (a) of this section may be required to testify as to any information in his or her possession regarding the fire loss of real or personal property in any civil action in which any person seeks recovery under a policy against an insurance company for the fire loss.

4

The circuit court further held that any settlement language that required Allstate to violate its obligation to comply with the law requiring cooperation with government investigations would be unenforceable. After reviewing the proposed release language submitted by the parties, the circuit court opined:

> The *Confidential Release and Settlement Agreement* tendered to the Court by Plaintiff [sic], with those changes stated upon the record, appears to be the more appropriately worded release that reflects that Allstate's duty and obligation to cooperate with authorities, comply with the law and/or any federal or state court order is not otherwise altered or impeded[.]

The circuit court then granted Allstate's Motion to Enforce Settlement, enforcing the settlement agreement of the parties and setting forth specific deadlines for execution and delivery of certain documents between them. This appeal followed.

"Where the issue of the enforceability of a settlement agreement requires the lower court to make findings of fact and apply contractual or other legal principles, this Court will review its order and the ultimate disposition under an abuse of discretion standard, its underlying factual findings under a clearly erroneous standard, and questions of law pursuant to a de novo review." Syl. Pt. 2, *Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 245 W. Va. 63, 857 S.E.2d 403 (2021). *See also* Syl. Pt. 1, *Riner v. Newbraugh*, 211 W. Va. 137, 563 S.E.2d 802 (2002) ("This court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement reached as a result of court-ordered mediation.").

On appeal, Petitioners raised nine overlapping assignments of error, which can be grouped into three major categories for purposes of our review: contract formation in general; whether an evidentiary hearing was necessary; and the requirements of "mediated settlements." *See Tudor's Biscuit World of America v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2 231, 237 (2012) (per curiam) (consolidating six largely redundant assignments into two categories of alleged error for purposes of review); *State v. Benny W.*, 242 W. Va. 618, 622, 837 S.E.2d 679, 683 (2019) (combining overlapping assignments of error); *State v. Seen*, 235 W. Va. 174, 179, 772 S.E.2d 359, 364 (2015) (combining two issues concerning finding of sexual motivation for purposes of evaluation on appeal).

### General Requirements of Contract Formation

Because settlement agreements are contractual in nature, "a definite meeting of the minds of the parties is essential to a valid compromise[.]" *Donahue v. Mammoth Restoration and Cleaning*, 246 W. Va. 398, 404, 874 S.E.2d 1, 7 (2022). "A 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Id.*

5

Petitioners argue that the parties' e-mail exchanges show that they were not in agreement concerning the terms of their alleged settlement and therefore there was no meeting of the minds sufficient to create an enforceable agreement between the parties. Specifically, Petitioners allege that Allstate demanded additional language in the SAR, more than was contained in a "standard confidentiality agreement," to which Petitioners did not agree. In support of their argument that there was no meeting of the minds, Petitioners cite the mediator's report of April 20, 2023, saying that the case had not settled during mediation.

Conversely, Allstate argues that the mediator's e-mail of March 30, 2023, and Allstate's follow-up e-mail set forth the relevant terms of the agreement in writing. We agree with Allstate. The March 31, 2023, e-mail by petitioners' counsel expressly acknowledges receipt of, and agreement with, the terms outlined in the March 30, 2023, e-mails of the mediator and Allstate's counsel, and indicates his intent to forward the necessary documents, including a W-9, for payment of settlement funds.[5] Petitioners' counsel's second e-mail of March 31, 2023, disputing the language of the SAR, is not grounds for setting aside the parties' agreed settlement.

In general, a settlement between parties can be reached by communications between counsel even when a party does not sign a written agreement. *See Donahue v. Mammoth Restoration and Cleaning*, 246 W. Va. 398, 404-05, 874 S.E.2d 1, 7-8 (2022) (upholding settlement agreement based on e-mails and voicemail); 15B Am. Jur. 2d *Compromise and Settlement* § 13, Westlaw (database updated August 2024).

We agree that the exchange of e-mails among the mediator and counsel in this case, which included all the material terms of the alleged settlement, such as the amount of the settlement and the need for confidentiality, was sufficient to create a binding settlement agreement. The SAR language requested by Allstate concerning its duty to cooperate with government authorities did not constitute a material change in the terms of the agreement, because Allstate was legally required to cooperate with government investigations, and that duty was implied in the confidentiality provision.[6] Moreover, the mediator's summary of the settlement agreement, which the petitioners agreed to, included an exception to the confidentiality provision for "disclosures required by law." Allstate's additional language may not have been necessary, because it was covered by "disclosures required by law," but the fact that it was already covered by more general language further supports the

---

[5] Petitioners note that the settlement funds were never paid in this case, but the record indicates that Allstate was never provided with the requested W-9.

[6] As the petitioners recognized at page five of Plaintiff's Opposition to Allstate's Motion to Enforce Settlement and Memorandum in Opposition filed in the circuit court, "[t]he requirement of cooperation [with investigations by government agencies and authorities] is implicit in all confidentiality agreements…."

conclusion that it was not a material change to the settlement agreement. The SAR language that Allstate requested may have "fleshed out" the details of the settlement agreement, but that fact alone does not preclude finding a meeting of the minds where there was no "material alteration of the parties' agreement." *See Russell v. Bayview Loan Serv., LLC,* No. 20-0681*, 2021 WL 2577498, at *5 & n. 2 (W. Va. June 23, 2021) (memorandum decision). As for the mediator's statement that an agreement had not been reached, we find that it was relevant,[7] but not dispositive, in determining whether there was mutual assent. The statement in the mediator's report was not binding on the circuit court because it had an independent duty to determine whether an enforceable contract had been reached prior to the dispute which arose over the nondisclosure language. Here, there are sufficient facts to establish the parties' mutual agreement to settle Petitioners' underlying claims. Accordingly, we affirm the ruling of the circuit court as to the creation of a binding contract between the parties, as evidenced in their e-mail exchanges on March 30 and 31, 2023.

### Whether an Evidentiary Hearing Was Required

Petitioners assert that an evidentiary hearing was required under *Levine v. Rockwool Int'l A/S*, 248 W. Va. 403, 888 S.E.2d 903 (2023). *Levine* is distinguishable because the e-mails involved in that case did not clearly show a meeting of the minds as they do here.[8] Moreover, *Levine* recognized that evidentiary hearings were not always required. *See Id.* at 409, 888 S.E.2d at 909. Here, the petitioners did not challenge the authenticity of the e-mails or show how an evidentiary hearing would have contradicted the clear intent of petitioners' counsel to accept the mediator's statement of the alleged settlement. Nor did the petitioners present further evidence by affidavit or otherwise to disprove the existence of an agreement after Allstate filed its motion to enforce the alleged settlement agreement. After reviewing the record, we conclude that an evidentiary hearing was not required given the circumstances of this case. As we have previously discussed, the language Allstate wanted to add to the SAR did not constitute a material change to the terms of the settlement

---

[7] Although settlement discussions during mediation are confidential, the language of *Riner* suggests that mediators may indicate whether an agreement was reached, and if so, what its terms were. *See id*. at 144, 563 S.E.2d at 809 ("… the trial court's questioning of the mediator went beyond the basic issue of whether in fact an agreement was reached and identifying the terms of that agreement .... While we do not approve of the trial court's entire line of questioning of the mediator, we do not find a violation of TCR 25.12 due to the non-disclosure by the mediator of confidential information discussed during the mediation process.").

[8] The *Levine* court cited a number of circumstances which required further factual development, such as one party's claim that the draft agreement contained an arbitration clause he had not agreed to, additional phone calls and discussions whose effect was not "considered by the circuit court," and the lack of "any indication about whether the parties acted in reliance on the agreement." *See id*. at 408, 888 S.E.2d at 908.

agreement, and regardless the parties could not have agreed to change Allstate's legal duty to cooperate with government investigations.

Furthermore, we note that the parties agree on appeal that the record developed in the lower court was and is sufficient to resolve whether there was a binding settlement agreement, although they disagree on the conclusion to be drawn from that record. *See* Petitioner's Reply Brief at 11 ("The parties agree on one thing. There is no necessity of a further hearing on the issue of whether there was a settlement agreement. Clearly, there was not."); Respondent's Brief at 11 ("… no testimony was necessary where the Petitioners did not challenge the authenticity of the subject e-mails..." and there was no explanation of what the testimony would have proven or how it would have contradicted counsel's acceptance of the mediator's proposed settlement).

### Requirements of a Mediated Settlement Agreement

Lastly, Petitioners allege that even if the general requirements for contract formation and enforcement were met, this was a "mediated settlement" and that there were additional requirements for enforcement which were not satisfied. Specifically, they argue that West Virginia Trial Court Rule 25.14 provides that a settlement agreement reached during mediation is only enforceable when a written agreement is executed.[9] However, as the Supreme Court of Appeals of West Virginia recognized in Syl. Pt. 2 of *Riner v. Newbraugh*, 211 W. Va. 137, 563 S.E.2d 802 (2002), this trial court rule "does not provide the exclusive means for the enforcement of" settlements which are reached during or because of a court ordered mediation.

The *Riner* court explained this holding in its opinion, stating that:

> …we do not believe that Rule 25.14 was intended to prevent the enforcement of settlement agreements reached through mediation that have not been reduced to writing and signed by all the parties. Instead, the Rule extends to the parties to a settlement agreement reached and signed following court-ordered mediation the availability of remedies routinely available for the enforcement of contracts without the correspondent duty of demonstrating the elements of a valid contract. The Rule does not, however, state, or even suggest, that only those settlement agreements that have been reduced to writing following court-ordered mediation and signed by all the parties are subject to enforcement.

---

[9] West Virginia Trial Court Rule 25.14 provides that: "If the parties reach a settlement and execute a written agreement, the agreement is enforceable in the same manner as any other written contract."

8

*Id*. at 141, 563 S.E.2d at 806. As a general rule, no particular form of agreement or written document is required for a valid compromise. 15A Am. Jur. 2d *Compromise and Settlement* § 13, Westlaw (database updated August 2024); *see generally U. S. ex rel. McDermitt, Inc. v. Centex-Simpson Const., Inc*., 34 F. Supp.2d 397, 399 (N.D. W. Va. 1999) ("A settlement agreement is a contract governed by fundamental principles of contract law. As such, the settlement agreement comes into being as soon as an offer, acceptance, and consideration are exchanged, regardless of whether the agreement is subsequently formalized in writing.").

The *Riner* court held that a settlement reached during mediation which does not result in a written agreement can be enforced when (1) the parties to the mediation reached an agreement; (2) a memorandum of that agreement was prepared by the mediator or at his direction, incident to the agreement; (3) the court finds that, after a properly noticed hearing, that the agreement was reached by the parties, free of coercion, mistake, or other unlawful conduct; and (4) the court makes sufficient findings of fact and conclusions of law for appellate review. *See* Syl. Pt. 3, *Riner v. Newbraugh*, 211 W. Va. 137, 563 S.E.2d 802 (2002). In this case, there was no allegation of any coercion, mistake, or unlawful conduct which led to the purported agreement, or any disagreement about the authenticity of the e-mails involved, so there was no need for a hearing. Moreover, the August 14, 2023, order entered in the circuit court was sufficient to permit appellate review and demonstrate that the other requirements were met.

Petitioners further argue that attorneys cannot mediate a settlement by themselves because West Virginia Trial Court Rule 25.10[10] requires parties to attend mediation sessions. However, this trial court rule, by its language, applies only to formal mediation sessions and does not limit the ability of parties or their counsel to reach an agreement outside of such sessions. It is not unusual for parties to continue settlement discussions

---

[10] West Virginia Trial Court Rule 25.10 (emphasis added) provides that:

The following persons, if furnished reasonable notice, are **required to appear at the mediation session**: (1) each party or the party's representative having full decision-making discretion to examine and resolve issues; (2) each party's counsel of record; and (3) a representative of the insurance carrier for any insured party, which representative has full decision-making discretion to examine and resolve issues and make decisions. Any party or representative may be excused by the court or by agreement of the parties and the mediator. If a party or its representative, counsel, or insurance carrier **fails to appear at the mediation session** without good cause or appears without decision-making discretion, the court *sua sponte* or upon motion may impose sanctions, including an award of reasonable mediator and attorney fees and other costs, against the responsible party.

after an unsuccessful mediation session, and eventually reach a resolution of their dispute; a client does not have to be at his attorney's elbow when a matter settles.

Attorneys are presumed to have authority to enter binding settlement agreements on behalf of their clients, *Messer v. Huntington Anesthesia Group, Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008) (per curiam), and a party disputing such authority has the burden of clearly showing a lack of authority. *Miranosky v. Parson*, 152 W. Va. 241, 245, 161 S.E.2d 665, 667 (1968). Furthermore, "the question of the attorney's want of authority to represent clients must be raised immediately by a motion or petition accompanied by affidavits." *Id*. Here, there is no indication in the record that petitioners offered any affidavits in the lower court in support of their position, or what proffers, if any, they might have made concerning evidence they would have liked to present at the hearing.

Finally, petitioners contend that the circuit court violated West Virginia Trial Court Rule 25.11 because that rule allegedly "provides that no Party may be compelled by Court Rules, the Court, or the Mediator to settle a case involuntarily or against the Party's own judgment or interest." We do not find this argument persuasive. While a party cannot be compelled to settle at mediation, the trial court rules do not prevent a party who voluntarily settles after a mediation session from being compelled to honor that agreement. A written agreement signed by the party sought to be bound is not required because enforceable agreements can be achieved through other communications between counsel. *See Levine v. Rockwool Int'l A/S*, 248 W. Va. 403, 407, 888 S.E.2d 903, 907 (2023) ("We have recognized that a settlement agreement can be reached via communications between counsel, even when a party does not sign a written settlement agreement."). Once the petitioners entered into a binding settlement agreement, their "second thoughts at a later time as to the wisdom of the settlement [did] not constitute good cause for setting it aside." *Moreland v. Suttmiller,* 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990) (per curiam).

Accordingly, we affirm the circuit court's order of August 14, 2023.

Affirmed.

**ISSUED:** October 28, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

10